GRIMMELL v. THE CHICAGO & NORTHWESTERN R'Y CO.

1. **Railroads:** TIME REQUIRED TO STOP TRAIN: OPINION OF FIREMAN. A locomotive fireman of four years experience may, as a witness, state his opinion as an expert as to the time or distance within which a given train, under a given set of circumstances, can be stopped.

2. **Appeal:** PRACTICE: REVIEWING EVIDENCE. This court, in reviewing rulings on evidence, will consider only such objections as were made in the trial court. For example, where the only objection was that certain expert testimony was incompetent, this court cannot consider an objection based on the form of the examination.

3. **Evidence:** IMMATERIAL: NOT MADE MATERIAL BY WRONG INSTRUC-
TION. It is not reversible error to exclude immaterial evidence, even
though it is made material by an erroneous instruction afterwards given.
The exception in such case should be to the instruction.

4. **Instructions:** SUFFICIENT IF CORRECT IN SUBSTANCE. The court
refused, upon defendant's request, to instruct the jury that defendant
was bound to use only ordinary care, but *held* that there was no error
in this, since the court so instructed the jury that they could not have
been misled as to the degree of care which the law required.

5. **Railroads:** CATTLE ON CROSSINGS: CAUTION REQUIRED OF ENGINEER:
INSTRUCTIONS. In an action to recover for a heifer which ran before
defendant's train from a highway crossing into a cattle guard, and was
killed, defendant asked the following instructions: "Unless you find
that the engineer, in the exercise of ordinary prudence, was bound to
anticipate that the heifer would stay on the track, or run into the cattle
guard, your verdict should be for the defendant;" and "If you find that
the natural thing for cattle on a crossing, under such circumstances as
shown in this case, would be for them to leave the track, instead of run-
ning into the cattle guard, then the engineer was justified in thinking
that the cattle would leave the track, and it was not negligence for him
not to stop or reverse his engine sooner than he did, and the defendant
would not be liable in this case." *Held* that the instructions were
properly refused, because it is not enough always for an engineer in
such a case to provide against what he believes or anticipates *will* hap-
pen, but it is his duty to provide against what he anticipates *may*
happen.

*Appeal from Greene District Court.*

MONDAY, OCTOBER 24.

ACTION to recover for the value of a heifer killed by one
of the defendant's trains. There was a trial to a jury, and
verdict and judgment were rendered for the plaintiff. The
defendant appeals.

*Hubbard, Clark & Dawley*, for appellant.

*McDuffie & Howard*, for appellee.

ADAMS, CH. J.—The animal was one of several which hap-
pened to be upon a crossing of the defendant's road, as the
train in question approached the crossing. The speed was
slackened, and the usual cattle alarm was given to frighten

the animals from the track. All left the track except the one which was killed. This one delayed a little as the train approached, and suddenly turned and ran along the track a few feet, and fell into a cattle-guard, where it was hit by the train. The plaintiff alleged that the defendant was guilty of negligence in not stopping the train before the accident occurred. The defense was based upon the theory that the engineer was justified in believing, before the animal turned toward the cattle-guard, that it would leave the track, and that after it turned towards the cattle-guard, and showed a disposition not to leave the track, but to run into the cattle-guard, there was not sufficient time to stop the train.

I. One Creed was examined as a witness. He testified that he had been in the defendant's employment as a loco-motive fireman for four years, and was acting as fireman on the train in question. He was then asked a question in these words: "State whether or not after she [the animal] made that turn there was then time to stop the train?" To this he answered "No." This question and answer were afterwards stricken out on the plaintiff's motion, and the defendant assigns the ruling as error.

*1. RAILROADS; time required to stop train: opinion of fireman.*

The objection to the testimony which the plaintiff urges is that the witness was asked for an opinion, and that the matter was not such as to justify the admission of expert evidence, and, even if it had been, the witness did not appear to be qualified to testify as an expert. But in our opinion neither of these positions can be sustained. The question as to the time or distance under which a given train, under a given set of circumstances, can be stopped, is, we think, one which involves technical knowledge and experience, or, at least, the exercise of judgment upon so many different facts, bearing upon each other, that a mere detailed statement of them would not be a sufficient guide for the jury. The witness, as fireman upon the train, had knowledge of the facts and circumstances, and, from his four years experience, should

have been able to exercise an intelligent judgment as to their bearing upon each other. We think that the question asked the witness, and the answer made by him, should not have been excluded. Perhaps, strictly, the witness should have been asked within what time and distance that train could have been stopped under the circumstances, and then what the time and distance were which were allowed the engineer to stop the train after the animal turned; but the plaintiff's objection did not appear to go to the form of examination. If the plaintiff's objection had been of that nature, we think it should have been distinctly stated by him, so that the defendant might have obviated it. The only objection made below was that the evidence was incompetent and immaterial.

2. APPEAL: practice: reviewing evidence.

II. One Bates, the engineer, was examined as a witnesss, and was asked a question in these words: "When you first looked out there, state whether or not you could see the cattle?" This question was objected to, and the objection was sustained. The defendant assigns the ruling as error. We do not see how the defendant was prejudiced by the exclusion of the question. It might be conceded that the cattle were not seen at first, but it seems to be undisputed that they were seen soon enough to stop the train if it had been necessary. The fact is, the engineer did not deem it necessary. He checked the speed and approached the cattle slowly, giving the alarm which he thought would be sufficient. If he had seen the cattle sooner, his duty would not, so far as we can see, have been different. He was bound to use reasonable care to avoid running over the cattle, and, without question, he had sufficient time to avoid running over them after they were seen. We are aware that in one of the instructions the jury was told, in substance, that the engineer ought to have seen the cattle sooner, if they had been in sight. Now if, as the instruction seems to assume, the failure to see the cattle sooner had had anything to do with the defendant's liability,

3. EVIDENCE: immaterial: not made material by wrong instruction.

it might be conceded that the defendant would have been entitled to show that they could not have been seen sooner. But it appears to us that the error was rather in the instruc- tion than in the exclusion of the evidence.

III. The defendant asked the court to instruct the jury that it was not bound to use extraordinary care, but only ordinary care. The court refused the instruc- tion, and the defendant assigns the refusal as error. The court instructed the jury with some particularity as to what the defendant should have done, and we do not think that the jury could have been misled as to the degree of care which the law required.

*4. INSTRUC- TIONS: suffi- cient if cor- rect in sub- stance.*

IV. The defendant asked an instruction in these words: "Unless you find that the engineer, in the exercise of ordin- ary prudence, was bound to anticipate that the heifer would stay on the track, or run into the cattle-guard, your verdict should be for the defendant." The court refused to give this instruc- tion, and the defendant assigns the refusal as error. The defendant's counsel say in argument: "This is the very pivotal point of the case." But it seems to us that the engi- neer might have been under obligation to stop his engine, even though he did not anticipate that the animal would stay on the track, or run into the cattle-guard. He might have reasonably believed that she would leave the track, and at the same time might have had a reasonable apprehension that she would not, but would flee before the engine along the track, and run into the cattle-guard. It is not always quite enough for a person to provide against what he believes or anticipates will happen. It is his duty sometimes to pro- vide against what he apprehends may happen. Prudent property owners constantly consult their apprehensions in attempting to guard against loss of property. We think that the instruction was properly refused.

*5. RAILROADS: cattle on crossings: caution re- quired of en- gineer: in- structions.*

V. The defendant asked an instruction in these words:

Vol. LXXIII—7

"If you find that the natural thing for cattle on a crossing,

**THE SAME.** under such circumstances as shown in this case, would be for them to leave the track instead of running into the cattle-guard, then the engineer was justified in thinking that the cattle would leave the track, and it was not negligence for him not to stop or reverse his engine sooner than he did, and the defendant would not be liable in this case." The court refused to give the instruction, and the defendant assigns the refusal as error. This instruction it appears to us has substantially the same vice as the last above considered. It might have been more natural for all the animals to do just what all but one did do, and the engineer might have been justified in thinking that all would act alike, yet it may be that he should, as a reasonable man, have apprehended that the one which did not leave would soon take fright, and in its fright flee directly before the engine, and run into the cattle-guard which was so near at hand. We think that the instruction was properly refused.

Some other questions are discussed, but, so far as they are likely to arise upon another trial, we think that they are substantially covered by the views which we have expressed.

For the error pointed out the judgment must be

REVERSED.