RICHARD FORAN, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — one approaching a railroad track must wait until smoke obscuring it clears away.*

In an action for injuries, alleged to have resulted from the negligence of a railroad corporation, the plaintiff testified that when he had approached within a few feet of the railroad track there was a heavy gush of smoke which obscured the approaching train. It was not claimed that this smoke was caused by the locomotive, but it was said to have been caused by tugs in a river near the track. Except for the smoke the plaintiff, who went onto the track and was injured, could have seen the train.

*Held,* that it was his duty to wait until the smoke lifted, and that his failure to do so amounted to contributory negligence.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from an order of the Supreme Court, entered in the office of the clerk of Erie county on the 12th day of November, 1891, denying a motion for a new trial made upon a case and exceptions.

Also an appeal from a judgment of said court, entered in said clerk's office on the 12th day of November, 1891, upon a verdict for the plaintiff for $5,000, after a trial at the Erie Circuit, before the court and a jury.

*Charles A. Pooley,* for the appellant.

*Edward L. Jellinck,* for the respondent.

MACOMBER, J.:

The plaintiff was quite seriously injured in a collision with a locomotive operated by the defendant, while crossing the defendant's tracks on Breckenridge street at Black Rock in the city of Buffalo, on June 13, 1889. He was at that time a teamster engaged in drawing dirt with a wagon and a team of horses, and was passing along Breckenridge street, which crosses the defendant's tracks at right angles, with a load of dirt which weighed about two tons. A considerable grade is shown in this street from Niagara street to within a short distance of the railway tracks, but manifestly it was not such a grade that would prevent a driver, even with such a heavy load, to have complete management and control of his horses. Breckenridge street was substantially level in the approaches to the tracks, and there was even a slight rise for a few feet in going upon the first track.

There was evidence from which the jury could have intelligently found that the train was moving into the city of Buffalo at this point at a speed of thirty miles an hour, but the rapidity of the movement of the train plays no important part in this appeal, as it seems to us, because the learned justice at the trial ruled that such rate of speed was not unlawful. It is claimed by the learned counsel for the plaintiff, that as his client came down the descending grade he was unable to detect the approaching train which was coming from the north by reason of natural and artificial obstructions which obscured his view. It is shown, however, that there was a space between the building upon the corner, which well might be claimed to obstruct a driver's view to a certain extent, of a clear twenty-two feet to the first or easternmost track of the defendant. There is evidence to the effect that a tree overhung the fence at a little distance from the corner, and some of the witnesses say that the limbs of such tree obscured the sight for six to eight or ten feet. Assuming this evidence to be reliable and to have been believed by the jury, there yet remained a space of at least fourteen feet where the driver could have seen clearly the approach of the train for a distance which would have enabled him, with the exercise of any reasonable care, to protect himself and his property from collision. It is, however, claimed in behalf of the plaintiff, that in this space, either of twenty-two feet or of fourteen feet, the vision of the plaintiff was obscured

by reason of a sudden "gush" of smoke which came upon the ground and prevented the plaintiff from seeing the approach of the train. If this smoke, in truth, came upon the tracks in the manner described by the plaintiff, it was no fault of the defendant, because no claim is made that it came from any locomotive or works of the defendant, but, on the contrary, that it came from the tugs in the river or from a neighboring brewery.

It seems to us, from the whole of the evidence, that the plaintiff received his injuries through the careless, not to say reckless, effort which he made in passing upon the tracks of the defendant while this smoke obscured his vision. The first track which was approached by the driver was the easternmost track, and it was the second track upon which the train was approaching. The plaintiff himself testified that he could not see on account of the smoke, and that what prevented his seeing the train was the trees and smoke. He further said, When "I got within twelve or fourteen feet of the track, it was the smoke that obstructed my view; a heavy gush of smoke; * * * plenty light enough if it was not for the smoke; no question except for the smoke; this smoke was so dense that I could not see the malt-house a hundred yards away; I could see may be twenty-five or thirty yards, and that was the case when I was coming down before I got to the track; this heavy gush of smoke all came down there all of a sudden; * * * I could not see more than twenty yards ahead; I could see down towards the canal where I was going with my load; I could not see along the track, the smoke was so dense; it was thick, black smoke, and that was so just before I struck the track."

He testifies further upon this subject, and also to the effect that after he discovered the approach of the train, which was about a hundred or a hundred and fifty yards to the north, he thought he would be able to get across the tracks before the train got there, and so urged up his team and made the effort, in which he failed. Upon the case, as the testimony of the plaintiff himself has left it, it seems to us that, under the authority of *Heaney* v. *Long Island Railway Company* (112 N. Y., 122), there can be no recovery by him in this action. In the case cited it was stated in the opinion of the court, in substance, that where smoke obscured the approach of a train, it was the duty of a passer-by to

wait until the smoke had lifted, so that he could see that it was safe for him to make the crossing.

It follows that the judgment and order should be reversed and a new trial granted.

DWIGHT, P. J., concurred; LEWIS, J.. not sitting.

Judgment and order appealed from reversed and a new trial granted, with costs to abide the event.