HARPER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department.   November 10, 1897.)

1. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.
   The conductor of a street car, which had stopped over 25 feet east of a defendant's railroad tracks, went forward to the middle track, looked in both directions, and, seeing no train, signaled to the motorman to come along.   As the car reached the middle track, it was struck by a southbound train, and the motorman was killed.   There was evidence that no signal was given; that a switch engine standing on a side track north of the crossing would prevent a view of the tracks beyond it towards the north, to one standing on the street-car track at any point from 20 to 40 feet east of the crossing; and that the conductor's view of defendant's tracks north of the crossing was interfered with by the glare of the switch engine's headlight and the escaping steam.   Held, that the question of the motorman's contributory negligence was for the jury.

2. SAME—NEGLIGENCE OF FELLOW SERVANT.
   The negligence of the conductor would not, as a matter of law, relieve defendant from liability.

Appeal from circuit court, Broome county.

Action by Gertrude Harper, as administratrix of John F. Harper, deceased, against the Delaware, Lackawanna & Western Railroad Company.    From a judgment on a nonsuit, and from an order denying a motion on the minutes for a new trial, plaintiff appeals.    Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

F. N. Gilbert, for appellant.
D. S. Richards, for respondent.

MERWIN, J.    This action is to recover damages for the death of John F. Harper, plaintiff's intestate, caused, as the plaintiff claims, by the negligence of the defendant.    At the trial, at the close of the evidence on the part of the plaintiff, a nonsuit was granted, the main ground, as then stated, being that the evidence was not sufficient to carry to the jury the question of contributory negligence. The ground was also taken that no negligence on the part of defendant had been shown.    Harper was a motorman in the employ of the Binghamton Street-Railroad Company, whose track runs nearly east and west along

the center of Robinson street in the city of Binghamton. Three tracks of the defendant's railroad cross that street nearly at right angles, the easterly one being the north-bound track, the middle one being the south-bound track, and the other, or westerly one, being a side track. They occupy a width of about 30 feet as they cross the street. On the evening of December 1, 1893, about 9 o'clock, a street car, upon which Harper was the motorman, and was stationed at his post in the front end of the car, came along Robinson street from the east, passed through a switch, which was 50 to 75 feet east from the easterly track of defendant, and then came to a standstill 25 or 30 feet east of defendant's east track. The conductor of the street car, one Caniff, then got off the car, and went ahead, stopped in the middle of the middle track, looked both ways, up and down the track, saw no train coming, and heard none, and then signaled the motorman to come along. He did so at a moderate rate, and just as he reached the middle track his car was struck by a train of defendant coming from the north on the south-bound track. From injuries then received, Harper afterwards died. The speed of defendant's train was from 20 to 25 miles an hour, on a slightly descending grade. There was evidence tending to show that no signal was given of its approach. The view from the crossing to the north was somewhat obstructed. About 100 feet north of the crossing, and on the switch east of the main tracks, there was standing a switch engine, with headlight burning, and shining towards the crossing, and blowing off steam. There is evidence that a man standing at any point between 40 and 20 feet east of the crossing could not, by reason of this switch engine, see the track northerly up the yard beyond the engine, and that, also, the glare of the headlight and the steam interfered with the view beyond there to one standing at the center of the tracks on the street. There was also, on the third or side track, a line of box cars, that, by reason of a curve westwardly in the main tracks, obstructed the view on them beyond the distance of 575 feet. There is evidence that Harper, as he left the switch on his track, looked to the north, and it may be inferred that had he looked to the north when, after stopping, he started to cross over, he could not have seen the approaching train. The conductor, after signaling Harper to come on, remained where he was, not seeing the approaching train until too late to prevent the approach of the street car. It was not shown that Harper, after he started, looked to the north. The decedent having stopped, and not being able at that point to hear or see any approaching train, and the conductor having gone ahead, and being unable, from the center of the crossing to hear or see any, and so informing the decedent, it should not be said, as matter of law, that the decedent was negligent in starting to go over. Having started, whether he should again stop, or make further efforts himself to look in either direction, was a question for the jury. The obstructions to the view were such, especially the glare of the headlight on the switching engine, that it was uncertain whether the approaching train could have been seen beyond the stationary light, and the distance between the crossing and that light may have been passed

over in so brief a time that a collision could not be avoided.   Besides, if no signal was given of its approach, its headlight may not have have been distinguishable from the headlight of the switching engine standing still and blowing off steam.   "If, in case of an accident at a crossing, it appears that the person injured did look for an approaching train, it would not necessarily follow, as a rule of law, that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage."   Rodrian v. Railroad Co., 125 N. Y. 526, 26 N. E. 741; McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647;   Greany v. Railroad Co., 101 N. Y. 419, 427, 5 N. E. 425; Pitts v. Railroad Co., 79 Hun, 546, 29 N. Y. Supp. 871, affirmed 152 N. Y. 623, 46 N. E. 1150.   The absence of signals and the presence of obstructions are circumstances to be considered.   Whether or not the decedent had, in the exercise of reasonable care, a right to rely upon the information received by him from the conductor as to the absence of danger, was, I think, under the circumstances here presented, a question of fact.   There was no particular arrangement on the subject between them.   Apparently, as employés of the same corporation, they were each in the discharge of their respective duties.   If the conductor was negligent, it does not necessarily follow that the defendant was relieved from liability for its negligence.   Perry v. Lansing, 17 Hun, 34; Schmidt v. Railroad Co., 55 Hun, 496, 8 N. Y. Supp. 664; Galvin v. Mayor, etc., 112 N. Y. 223, 19 N. E. 675.   As a rule, a stranger cannot take advantage of the negligence of a co-employé of the person injured.

The absence of contributory negligence may be shown by circumstantial as well as direct evidence, and, if different conclusions may be drawn from the circumstances proved, a question is presented for the jury to determine.   Chisholm v. State, 141 N. Y. 246, 36 N. E. 184.   So it has been said that, if there is any inference of fact in doubt, or any evidence, direct or inferential, of care or caution on the part of the person injured, the question is for the jury.   Campbell v. Railroad Co. (Sup.) 3 N. Y. Supp. 694, affirmed 121 N. Y. 669, 24 N. E. 1094.   See, also, Parsons v. Railroad Co., 113 N. Y. 355, 364, 21 N. E. 145; Beckwith v. Railroad Co., 54 Hun, 446, 7 N. Y. Supp. 719, 721, affirmed 125 N. Y. 759, 27 N. E. 408; Sauerborn v. Railroad Co., 69 Hun, 429, 23 N. Y. Supp. 478, affirmed 141 N. Y. 553, 36 N. E. 343.   In the present case the question of contributory negligence should, I think, have been submitted to the jury.   As no point is here made by the defendant that the evidence was not sufficient to carry the case to the jury on the question of defendant's negligence, that subject need not be considered.

Judgment and order reversed, new trial granted, costs to abide the event.   All concur.